## Bernstein v. Hartford Accident and Indemnity Company.

*Louis E. Levinthal*, for plaintiff.

*Robert Brigham* and *Charles I. Thompson*, of *Ballard, Spahr, Andrews & Ingersoll*, for defendant.

DICKINSON, J., February 17, 1931.—We were asked to withhold a ruling in this case until supplementary briefs had been submitted.

What is called the "depreciation in the value of real estate" has brought to the courts a number of controversies of the same general kind which make the call upon us to give to this rule a fuller discussion than we would otherwise give to it. A number of building operations (as here an apartment house) have been entered upon which were financed by the creation of a first mortgage, followed by one or more other mortgages, an issue of the bonds of the owning corporation topped off with an issue of stock. The basis of value offered to investors was a planned building yielding a sufficient income to cover the carrying charges, interest on the loans, and to pay an attractive dividend to stockholders. The completion of the building was assured by the bond of a surety company that the building would be erected in accordance with the plans and specifications, and the promise of an ample income was given by the contract of a managing or leasing corporation to pay the required sum for the use of the building when built. If the building is erected as planned and yields the promised income in time to meet the carrying and interest charges, the scheme will work out as long as the income is forthcoming and the mortgagees will be content, assuming the estimated value of the real estate holds. If, however, the completion of the building is delayed so that there is no income out of which the interest charges can be met, and the market value of the real estate has declined, the first mortgage is foreclosed, the property bought in, and the other investors are left in the financial cold. There was here no second mortgage, the plaintiff and others having a deferred interest in the first mortgage, but the general plan was that outlined, so we will treat the plaintiff as the holder of a second mortgage. The construction contract here contemplated a completed building by May 19, 1929. The contractor made default and the surety (the defendant here) was called upon to complete. This it did, but the building was not completed until March, 1930. A consequence was *(post hoc* or *propter hoc)* that, there being in the interval no income, the interest on the first mortgage was unpaid, and in June, 1930, the real estate premises were sold under foreclosure proceedings and bought in by the first mortgagee for a nominal sum. The defendant, as surety, had given two bonds for the completion of the building, one to the first mortgagee and another to the plaintiff in the penal sum of $25,000.

The plaintiff in his statement of claim has set forth several different measures of damage. One is on the theory that had the building been erected in accordance with the time schedule, the mortgage of the plaintiff would have been well secured and would not have been lost, but because of the delay the mortgaged property had by the time the building was completed so depreciated in value that the mortgage of the plaintiff was wholly lost by divestiture and the damage of the plaintiff the mortgage sum up to the penal sum of the bond.

This is a rule for judgment, and we cannot, whether this is a proper measure of damages or not, enter judgment on this theory of the measure of damages, because the affidavit of defense denies the fact the loss was due to the delay, but avers, on the contrary, that the depreciation in the value of the

real estate, to which the loss was due, came to pass not after May 19, 1929, the completion date, but before, so that no loss was due to the delay in completion.

A second measure of damages is the loss of income during the period of delay. We cannot enter judgment for damages so measured, because (aside from the truth that this loss was not that of the mortgagee) there is no averment of what this loss was, and we cannot assume it to have been $25,000 or any other sum.

A third measure of damages averred is the penal sum of the bond. The logic of this is that there is an absolute promise to pay the sum of $25,000, from which, as expressed in the condition of the bond, there is no relief except by the completion of the building, in accordance with the contract for its erection.

This contract called for completion by May, 1929, and, as the affidavit of defense admits, it was not completed in time. It is admitted it was not completed as promised, so that the obligation of the bond is not avoided, but must be met in accordance with its tenor.

This is the real and indeed the only basis for the rule taken. We have before dealt with this general subject and are repeating in substance what has been before said. A cause of action exists in the right to judgment sense only when two elements are present. There must be both an *injuria* and a *damnum*. The *injuria* here exists in the default, but this carries with it the right to nominal damages only, for which the plaintiff is not asking. Under the system of pleading which formerly prevailed, the pleader set forth his *injuria* in the cause of action sense and followed this with his averment of damage. He was not required to plead any measure of damages. This was altogether a trial question. If he set forth a measure of damages, he was not required to limit himself to any one measure, but was privileged to plead one measure in one count and a different measure in another count. The Practice Act of 1915 has made no real change in this respect. The proper measure of damages is still a trial question. If the plaintiffs sets forth one or more measures of damages, the defendant, it is true, may submit to the court as an *ad interim* question of law whether any measure pleaded is the proper measure, and have this ruled in advance of trial. A plaintiff, however, cannot do this by a rule for judgment.

The defendant here has met the averment of damage by a flat denial that the plaintiff has sustained any loss, and the plaintiff must meet this at the trial. As there may be an *injuria* without a *damnum* (other than nominal), so there may be a *damnum* without an *injuria*. The condition of such a bond as we have here might, for illustration, be fulfilled by a completion of the building in accordance in all repects with the contract, and yet the second mortgagee loses his investment because of a decline in the market value of the real estate. Here, the loss in this view would be precisely what it is now, and yet there be no liability of the obligor in the bond. Assuming this loss to be a *damnum* in the legal sense, there would be a *damnum* but no *injuria*. Assuming, however, the building not to have been completed in time and an *injuria* to arise out of this and the proper measure of damages to be the difference in the market value of the real estate between what it was when the building should have been completed and what it was when the building was completed, we need not inquire whether this measure is the proper one or the correctness of it a trial question, because, as before stated, the affidavit of defense denies any such loss in fact.

Rule for judgment is discharged.